Good morning, Your Honors. May it please the Court, my name is Parisa Sidhu Gyanzadeh, pro bono appointed counsel for Petitioner Catalina Garcia Nunez. I am a student at Chapman University School of Law, and I am admitted to practice before this Court under the supervision of Professors Afrasiabi and Kim Penfield. I would like to reserve two minutes for rebuttal, please. You may do so, but you should keep track of your own time, Wilfred, I remind you. Yes, Your Honor. This Court should reverse the BIA's denial of Catalina's motion to reopen and vacate the removal order for the following three reasons. First, Catalina has sufficiently demonstrated that her failure to appear at her deportation hearing was because she was subjected to ineffective assistance of counsel and notario fraud, which under the law of this circuit constitutes exceptional circumstances required to rescind a removal order under 8 U.S.C. § 1229. The government does not dispute that Catalina was a victim of ineffective assistance of counsel and notario fraud. Second, Catalina has sufficiently established that she did not receive notice of the deportation hearing, also allowing the removal order to be vacated under 8 U.S.C. § 1229. Again, the government does not dispute that. You said she hadn't received it, but how about time? Does time figure into the equation? For notice of the removal order, Your Honor? Did she know the period of time passed and nothing was happening? Assume she didn't receive it as you're arguing. Assuming that she did not receive the deportation hearing. For the sake of the argument, we will go by the record, but I'm asking you the question, does time factor in? If you're referring to time for her receiving the deportation notice or the time in which she became aware of the fact that she had been ordered deported and then filed her motion to reopen, is that the time that you're referring to? Well, I'm referring about the time that she first knew she was wrongly in the country, allegedly wrongly in the country, and then the delay before anything happened or before she did anything. You're referring to? So let's assume she didn't get anything, she didn't do anything. She knew time was passing and somebody knew she was here. Somebody knew she was here and that somebody believed she was here illegally. You're referring to the due diligence argument, I assume, Your Honor. Yes, Catalina, from the time that she became aware of the deportation order and the fact that an asylum application had been filed on her behalf without her consent, without her knowledge, was in 2005. From that point, she did act diligently, Your Honor. She did file timely her motion to reopen on April 1st of that year. And that is the first time that she became aware of that deportation order. After acting diligently from the time that she realized that she had been subjected to the fraud to begin with. However, at the time that she first realized that she was the victim of notario fraud in 98, she did not know the extent of the fraud. She did not know the actual harm of the misconduct that was committed upon her. And this Court has held in Fajardo v. INS that the statute of limitations will be told until the alien is aware of the harm which resulted from the non-attorney's misconduct. This holding seems to suggest not only an objective standard, but a subjective standard, wherein the statute of limitations does not begin to toll until that particular alien becomes aware not only of the fact that she has been subjected to misconduct, but the actual harm that resulted from that misconduct. In this case, the harm being the deportation order. Like Catalina, the alien in Fajardo v. INS also did not receive notice of the denial of his application or the deportation hearing, as all such notices went to his non-alien, the notices. And this Court considered that the lack of notice was pivotal in tolling the statute of limitations for four years until the alien Fajardo obtained new counsel and learned of her deportation order, much like Catalina. Unlike Catalina, however, in Fajardo v. INS, the alien knowingly and willingly submitted an immigration, an application for asylum with the assistance of the immigration consultant. Furthermore, that alien attended the asylum interview. Catalina did not even know that an application had been submitted on her behalf, as the notario did so fraudulently and without her consent. In fact, in every published case that has been presented to this Court, all the aliens were aware that some sort of proceeding was pending on their behalf, that an application had been filed, that they instigated or soon became aware of. And all of those aliens were on notice, unlike Catalina, making this case not only factually unique, but also factually more compelling for an allowance of equitable tolling. Catalina not only did not know, she had no reason to know. It defies reason why the notario filed the asylum application. Again, it is uncontested that Catalina was not aware of the fact that the asylum application had been filed. And from the time that she learned of the fraud, when she failed to receive her residency card and she went to speak to the notario and found that her office was empty, she did act diligently. She hired several attorneys at that time. None of those attorneys, those American attorneys, realized the extent of the fraud. A FOIA request was not conducted at that point. Not until her final attorney in 2005 did a FOIA request, did Catalina become aware of the actual harm that was committed upon her, which was the deportation order. What, counsel, what is the significance of apparently her signature is on the form, on the application? Yes, Your Honor. In regards to that signature, Catalina has contended in her affidavit that that is not her signature. And if it is her signature, she was not made aware of what she was signing. Again, the facts indicate that that asylum was, that asylum application was filed without her consent and without her knowledge. The information that is submitted on that form is inaccurate, one being that it fails to state that Catalina was a United States citizen daughter, which would have behooved her to state on her application. Also, the fact that the address on the application was not her own. It was that of the notario. And she never gave consent for anyone's address to be used other than her own. And furthermore, the beginning of the application states that the applicant does not speak English. However, at the end, it states that she was not aided in filling out the application. These inconsistencies indicate that Catalina was not privy to the knowledge of the filing of the application, and, again, supports her contention that that signature did not belong to her or was obtained fraudulently without her consent of what she was actually signing. Furthermore, Catalina ---- You know what her name is, Ms. Nunez. Yes, Your Honor, but in our brief and now we've been referring to her as Catalina. But a lot of people don't need to be called by their first names. Would you prefer that I call her? Call her anything you like. She's your client. And honestly, semantically, it's difficult to say Ms. Nunez's deportation order. That's the only reason as well. Furthermore, Catalina, it does not reasonably follow that she would have known about the filing of the application, and that being the issue before this Court, whether she had known or reason to know of the deportation order caused by the filing of the application. It does not reasonably follow that because an notario stamps an alien's passport with a fraudulent work permit and proof of residency that an asylum application would have been filed as well. And as I said earlier, it actually defies reason that the notario filed this application because it did not behoove any of the parties involved. Furthermore, Catalina had no reason to believe that she would have known about the filing of the application, and that being the issue before this Court, whether she had known or reason to know of the filing of the application. You wanted to reserve time, young lady. You're down to a minute. Yes, Your Honor. I will conclude by asking this Court to reverse the BIA's denial of Catalina's motion to reopen and vacate the removal order and hold, as this Court did in Fajardo v. INS, that the statute of limitations is equitably told until 2005, when Catalina became aware of the harm resulting from the fraud committed upon her. Thank you. Good morning. My name is Nancy Friedman, for the Respondent, the Attorney General. If I might, I'd just like to get to the crux of what's at issue in this case, and that is whether the Petitioner failed to exercise due diligence and, therefore, is not entitled to invoke the equitable tolling here. And let me begin, please, by referring to what's undisputed in the record, and that is, you know, Petitioner's own declaration at page 165 of the record. And if I could refer to what the Petitioner wrote at paragraph 26 of her declaration. She's describing the point at which she realized that she had been defrauded by the notario, and states, at this time, I believed that I had been defrauded out of $3,500, but I did not know the full extent of the fraud committed upon me until years later. And it's not exactly clear the exact date that she's referring to, but it's apparently approximately 1998. So, counsel, at that point, she apparently knows she's been duped about her permanent resident card and the stamp in her passport. But it appears she has no knowledge that an asylum application was filed. So how can she have a lack of due diligence about something she doesn't know anything about? Well, apparently, she didn't know, you know, the specifics of what the notario had done at that point. But the fact of the matter is, by her own statement, she absolutely was aware that the notario had taken her money and had not done what she had said she was going to do, and that there was a problem. Isn't it mostly to be expected that somebody's going to take money by fraud, they're not going to do anything? I'm sorry, Your Honor, that the person who took your money was... You said that he didn't do what she expected him to do. All right? If that was so, wouldn't the proper assumption be that he did nothing? But in this case, he did something, didn't he? It seems that way, yes. But it's not normal that they do something, crooks. Well, I don't know which is normal. You've never met a crook? Excuse me, Your Honor. I said, have you ever met a crook? Crooks don't act that way. Right. Agreed. Agreed. But the issue I think that the Court is interested in is when she was aware that there was a problem with something the person didn't do or did do and what she did from that point forward. And it seems that that point that we're talking about here is about 1998. And then also, in the same declaration on page 165 of the record, Petitioner says, number one, she knew the notario was gone in 1998. Now, she consulted, she says, some attorneys. We don't know who they were or whether she paid them or whether she retained them or just consulted with them or exactly what had happened at that point. We don't know from the record. But we do know she sought some advice at that point. Ms. Friedman, this record shows pretty affirmatively that somebody took unfair advantage knowingly of the Petitioner. I think you'd agree with that. I agree with that. So the question that we have to decide, I think, and it starts off with our first question, what did she do when she found out she had a problem? I agree, Your Honor. And let's assume that she didn't do anything. What was working, and maybe she didn't know it. We've alleged that she didn't know it. A petition had been filed and nothing, no follow-up on the petition. Now, what in this record says to us that she knew or should have known that that petition was filed? When you say that petition, you're referring to the petition for labor certification? Yes. I've forgotten what she said. She was trying to get a labor certification. Yes. Originally is why she went to the notario. Yes. That's not what he filed. He filed an asylum application. Isn't that correct? That's correct. All right. And because the asylum application, she never showed up for the interviews and so on and so forth. Correct. That was denied and then the service went and ordered her deported. Is that correct? That's correct. Okay. Now, did she have any knowledge of this at all? She did not know the specifics, apparently, of the in absentia order, you know, that followed the asylum application. So there's no doubt about that in your mind at all? Only going by the record evidence, it seems clear, assuming everything the petitioner said is correct, that she did not know about that. Okay. Now, it's your position that she should have done something affirmatively with the INS when she found out that the guy had stolen her money? When she knew of the fraud. That the notario had stolen her money. Is that correct? That's correct. We're talking about 1998. And it's the position of the petitioner that the only time she should have done something about it is when she found out what was going on completely, when she knew what had actually happened. Well, the problem is that's not the law in this circuit. All right. That's what I want to get to. And what I was going to get to in a minute was the fact that I believe the petitioner said there are all the cases from this Court agree that equitable tolling applies in circumstances such as this. My research did not find one single case in which the petitioner says I knew I was defrauded and then seven years or even several years passed without, you know, the petitioner being diligent. The problem in this case is that from 1998 up until 2005, she didn't do anything. And that's why there's a lack of due diligence here. She knew that there was a problem, and she was suspicious back in 1998. There is no case that I am aware of in this Court that says she must know, you know, the specific facts and figures of every detail that had happened. The fact is, ding, ding, ding, she was on notice in 1998. She knew there was a problem. She knew something was wrong. She took some steps. And then nothing happened for seven years. In the ---- Breyer, what would the opinion of the Court say if it affirmed in your view? What should it say? It should say that the Board did not abuse its discretion in this case in denying the motion to reopen because the petitioner, upon learning that there was a problem, took no action for seven years. Counsel, the problem I'm having with the government's argument on that is the problem that she was aware of, having her money stolen by the notario, it's not really causally connected to the problem of there being an in absentia removal order. So let's say she knew her money was stolen. How does that causally give her cause? Why does that give her cause to take action with the BIA? Because, Your Honor, in this Court's decisions, and I'm referring to the Albio de Leon case, what should trigger her due diligence is the fact that she had become suspicious. She knew that the notario was supposed to do something to help her with labor certification and her immigration issues. She knew that she had problems with her immigration status. She wasn't unaware that she was not in legal status in this country. Obviously, she was trying to take steps to, you know, to get permanent residency in this country. There's no dispute about that. So the Albio de Leon decision from this Court specifically covers this situation and says when the petitioner becomes suspicious that there's a problem, they have to act promptly with due diligence. In that case, the petitioner knew something was wrong, contacted the immigration court, and was referred to some immigration legal aid groups that could help them. Mr. Friedman, your time has expired. Thank you. Therefore, I thank the Court and will submit on that. Thank you. Thank you. Your Honors, I would just like to briefly state that it is not reasonable to assume in this case that Catalina did not act with due diligence because she did not know of the deportation hearing. It does not reasonably follow that because a fraudulent stamp in her passport had been placed that she should also assume the asylum application had been filed whereupon her diligence would be called for, just as if a lawyer cheats a foreign client out of money, should the client then assume cynically that the lawyer also did harmful things unrelated to the representation? No. The difficulty, and you'll have to decide it, is whether she had a duty to inquire when she knew, did she have a duty to do something to find out. Now, but you've used your time. Your Honors, then I'd just like to conclude, if I may. You may not. Thank you, Your Honors. We alerted you that you were using your time, and you elected to proceed. So your time has expired. Thank you. Case just argued is submitted.
judges: Farris, Gould, Duffy